# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSSIE HAILE GHEBRESLASSIE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>JAMES JANECKA, in his official capacity as Warden of the Adelanto Detention Facility,<br>DAVID MARIN, in his official capacity as Field Office Director of the Immigration and Customs Enforcement, and Removal Operations Los Angeles Field Office,<br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, and<br>PAMELA BONDI, in her official capacity as Attorney General of the United States,<br><br>　　　　Respondents. | Case No. 5:25-cv-03447-JWH-DTB<br><br>**ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [ECF No. 7]** |

Before the Court is the *ex parte* application of Petitioner Mussie Haile Ghebreslassie for a Temporary Restraining Order ("TRO") to enjoin Respondents James Janecka, David Marin, Kristi Noem, and Pamela Bondi from continuing to detain him. The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support,[1] and in the absence of any opposition, the Court **GRANTS** Ghebreslassie's Application as set forth below.

## I. BACKGROUND

Ghebreslassie, a citizen of Eritrea, entered the United States without inspection in 2008, and in 2009 he filed an application for asylum.[2] He was placed into removal proceedings, and ultimately his removal was ordered withheld under the Convention Against Torture ("CAT").[3] On August 9, 2017, Ghebreslassie was formally served with an order of supervision,[4] pursuant to which he regularly reported to Immigration and Customs Enforcement ("ICE").[5] On October 15, 2025, while reporting to ICE's Los Angeles Field Office, Ghebreslassie was arrested and detained without notice or explanation.[6] The only reason that Ghebreslassie received for his detention was in the form of

---

[1] The Court considered the documents of record in this action, including the following papers: (1) Pl.-Pet.'s *Ex Parte* Appl. for a TRO (the "Application") [ECF No. 7]; and (2) Pl.-Pet.'s Pet. (the "Petition") [ECF No. 1].

[2] Petition ¶¶ 1 & 2.

[3] *Id.* at ¶ 2.

[4] Application 1:16-20.

[5] Petition ¶ 3.

[6] *Id.* at ¶¶ 4 & 5.

a "Warning for Failure to Depart" that was delivered to him on December 1, 2025—after approximately seven weeks of detention.[7]

On December 18, 2025, Ghebreslassie filed the instant Petition, and four days later he filed an Application for a TRO. In his Application, Ghebreslassie seeks a TRO affording the following relief:

- enjoining Respondents from continuing to detain him and, following his release, enjoining Respondents from re-detaining him without complying with all applicable regulatory, statutory, and constitutional requirements predicate to such detention;
- enjoining Respondents from removing him from the United States to Eritrea, or to any other country, without first complying with all applicable regulatory, statutory, and constitutional requirements predicate to such removal; and
- waiving any bond requirement.

## II. LEGAL STANDARD

A TRO preserves the *status quo* and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

---

[7] Application 2:2-4.

A party seeking a TRO or a preliminary injunction must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). When the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

If the court issues a TRO, it must also issue an order to show cause why a preliminary injunction should not issue. *See* L.R. 65-1.

### III.  ANALYSIS

Ghebreslassie argues that Respondents violated his procedural due process rights by (1) failing to follow regulations governing revocation of release of removable noncitizens who have been ordered removed; and (2) detaining him without reasonable prospect of imminent removal. The Court concludes that, at least with respect to his first argument, Ghebreslassie satisfies the *Winter* factors, and, therefore, the issuance of a TRO is appropriate.

**A.    Likelihood of Success on the Merits**

Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent. Indeed, this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." (citation modified)). "The fundamental requirement of due process is the opportunity to

Case 5:25-cv-03447-JWH-DTB   Document 13   Filed 01/08/26   Page 5 of 8   Page ID #:193

be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified).

Section 1231 of Title 8 of the United States Code governs the detention and removal of noncitizens who have been ordered removed—such as Ghebreslassie. Relevant here, two regulations address the revocation of the release of noncitizens subject to a removal order: 8 C.F.R. §§ 241.13(i)(3) & 241.4(l). Those two regulations require that "upon revocation" the alien shall "be notified of the reasons for revocation of his or her release" and shall be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3) & 241.4(l). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 were intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Constantinovici v. Bondi*, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (citation modified).

Here, Ghebreslassie contends that, as a noncitizen whose detention is governed by 8 U.S.C. § 1231, he was entitled to the process required by 8 C.F.R §§ 241.13 & 241.4, which Respondents failed to provide. The Court agrees. Ghebreslassie's detention falls within the scope of one or both of 8 C.F.R. §§ 241.13(i)(3) & 241.4(l). Courts in this district have arrived at the same conclusion in cases with similar facts. *See, e.g.*, *Luu v. Bowen*, 2025 WL 3552298 (C.D. Cal. Dec. 11, 2025); *Hassanzadeh v. Warden, Desert View Facility*, 2025 WL 3306272 (C.D. Cal. Nov. 25, 2025). This Court joins those courts and concludes that Respondents' failure to provide Ghebreslassie with the required notice and interview constitutes a due process violation. Thus, the Ghebreslassie is likely to prevail on the merits of his due process claim.

-5-

With regard to Ghebreslassie's *Zadvydas* argument related to the foreseeability of his removal and the length of his detention, the Court notes that Ghebreslassie's post-removal period detention has lasted approximately 10 weeks—a period short of the presumptively reasonable six-month period specified by the Supreme Court. *See Zadvydas*, 533 U.S. at 701. That fact does not preclude Ghebreslassie from rebutting the presumptive reasonableness of his approximately 10-week detention. However, the Court need not address Ghebreslassie's likelihood of success on the merits of this claim because "likelihood of success on even just one claim is sufficient [for injunctive relief] as long as that claim would support the injunctive relief sought." *Citibank, N.A. v. Mitchell*, 2024 WL 4906076, at *3 (N.D. Cal. Nov. 26, 2024).

**B.    Irreparable Harm**

Ghebreslassie has been detained without the procedures or notice required by the applicable regulations for at least 10 weeks. Thus, he has been deprived of process in a manner that likely violates his constitutional rights for that time. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Ghebreslassie would be immediately and irreparably harmed by continued deprivation of his liberty without constitutionally mandated due process. *See Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (finding that irreparable harm was likely to result from the Government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013) (finding that irreparable harm was likely to result from the Government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

### C. Balance of Equities and Public Interest

Because Ghebreslassie challenges a policy that is likely in violation of his constitutional rights, both the equities and the public interest favor the issuance of a temporary restraining order. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) ("[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue."). Furthermore, "[g]enerally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal. 2020). Accordingly, the Court concludes that both factors weigh in favor of Ghebreslassie.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Ghebreslassie's instant Application for a TRO [ECF No. 7] is **GRANTED**.

2. Respondents are **TEMPORARILY ENJOINED** from continuing to detain Ghebreslassie. Respondents are **DIRECTED** to release Ghebreslassie **FORTHWITH** under the terms and conditions of his existing order of supervised release, as if Ghebreslassie had not been detained. This Order does not provide Ghebreslassie with blanket immunity from future removal—that relief is likely beyond the Court's jurisdiction—but any future enforcement actions after release must comply with the required procedures.

3. Respondents are **ORDERED** to **SHOW CAUSE** in writing by 12:00 noon on January 19, 2026, why the Court should not issue a preliminary injunction in this case.

4. Ghebreslassie is **GRANTED** leave to file an optional response no later than 12:00 noon on January 21, 2026.

5. A hearing on the preliminary injunction is **SET** for January 22, 2026, at 10:00 a.m. Counsel for all parties are **DIRECTED** to appear in person

at that date and time in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

      6.    This Temporary Restraining Order is issued at 9:20 a.m. on January 8, 2026. It shall remain in effect until the conclusion of the hearing on January 22, 2026.

**IT IS SO ORDERED.**

Dated: January 8, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE